The next case on calendar for argument is Nettleton v. Exact Sciences Corporation. Counsel for Appellant, please approach and proceed. Thank you, Your Honors. May it please the Court? My name is Andrea Coit. I am the attorney for the plaintiff, the appellant in this case, Christopher Nettleton. I have 10 minutes, so I'm going to jump right in. If there are any questions about the facts, please stop me and ask. Mr. Nettleton brought two claims. In this case, a breach of contract claim and a fraudulent inducement to enter into an employment agreement claim. The District Court dismissed both of those claims on a 12B6 motions with prejudice. In the Oregon Appellate Court case of Warren v. Smart Choice Payments, with respect to our contract claim, the Court of Appeals explained that to determine if the parties intended the integrated writing to be a complete or partial integration, the Court considers all relevant evidence, including writings and the surrounding circumstances. In this case, Mr. Nettleton presented a breach of contract claim arguing that the letter that the District Court determined was a full and complete integration was, in fact, a partial integration. He attached to his complaint two emails, one dated August 31st of 2021 and the other September 3rd, that he asserted in this case made up the contents of his employment agreement. At Excerpt of Record 32, the August 31st email stated that Exact Sciences, the defendant in this case, wanted to make hiring of Mr. Nettleton, a former Pfizer employee who sold Kologard for Exact Sciences, wanted to make it easy. It told him in that email that all he had to do was submit an application, which required him to give his name, his address, his date of birth, and his driver's license number, and a Social Security number. And if he did that, he would receive an offer commensurate with the above. Now, the above in that email is the description of the position being offered to him of Senior Territory Manager. The above included the description of the pay he would receive, the bonus potential, and the unconditional assertion that this position does not require relocation. Was it an unconditional assertion or was it an expectation? It was an absolute unconditional assertion. What's the language that you're relying on to say that there was an unconditional assertion that there would be no relocation? It is in the Excerpt of Record 32. It is the August 31st email, and it is a statement that says, The position offered above will not require relocation, and it is our expectation that the Pfizer colleagues' territories will remain the same. So, Counsel, that was true, even if we accept that that was a term of the contract and that it wasn't overcome by later communications. When he started the job, that was true. He didn't have to relocate, and he did have his same territory. And my understanding is that this was an at-will contract. He didn't have a guarantee for any sort of period of time. So how do you establish breach when things changed later? The assertion made to Mr. Nettleton was that he would not have to relocate if he took that job ever. But you're reading a time duration into this sentence that is not there expressly. Well, there's also no time duration in that sentence. So, yes, they could have fired him at any point. We are not saying he couldn't have been fired. If they said, We don't want you here any longer after eight months of his working, you're fired, that would be termination in an at-will employment. So what's the difference between saying you're out and out fired versus things have changed within the company, we need to make some adjustments, this is going to have to be how it goes going forward. If you can't do that, you're fired. Then that would be presenting him with a new contract, and he would have to accept that, or he would be fired. It seems that the theory in this case is that by doing what I just described, they were breaching. I believe that is our theory. Our theory is that that was a condition of the agreement. That was an obligation that he would not be relocated if he accepted their offer of employment ever. No, they could have fired him. But he wasn't relocated. He actually wasn't relocated. His territory was, and he could still service that territory without relocating. Correct? That, Your Honor, I believe is a disputed issue that needs to be tried to the trier of fact. Whether or not he was moved from Eugene, Oregon, where he had lived for 30 years of his life. He wasn't moved. His job was moved to central and eastern Oregon. Cities and towns that were at- Territory. The territory that he was responsible for. That he had to cover. I agree. Now, whether or not that consisted of a relocation, he believes it does. If exact sciences believes it didn't, and they don't think they breached, that is an issue that needs to be decided by the trier of fact. It is not an issue that can be decided on a motion to dismiss. The court had to have determined if they believed that this was a material term of the agreement, but there was no breach, because all they did was change his territory, the district court would have had to make the factual determination that he was not relocated. That can't be made on a 12B6 motion. So, counsel, we are going to run out of time, and I would like you to address the fraud claim and address what do we do with reliance and reasonable reliance when we're in a situation of an at-will contract that doesn't have any sort of guarantee of duration. So, again, that- Sorry, Your Honor. The reasonable reliance in this case is found in Mr. Nettleton was told, if you accept this offer, if you do these things as conditions precedent, fill out this application, then you will get a job that is described in this e-mail, an offer for a job that will not require relocation. He asserted in his complaint that he relied on that statement. Exact Sciences has never told us, in all of the briefings, why it made that statement to him. Either they intended it to be a term of the contract, or they didn't. If they didn't, then it was false. And his reliance on it, again, he has said in the complaint that he would not have taken this job, but for that affirmative assertion. Reliance has to be objective, certainly, to be reasonable. But his facts and circumstances are taken into account when determining whether or not it is an objective reliance. Someone in his situation, and he put into that complaint that he had lived here 30 years, his father was ailing, he was a sole care provider for his father, his mother's parents were here, this was his life. There's no allegation that he communicated any of this to Exact Sciences, correct? No, but... Or asked more questions about the statement after receiving the offer, which includes the statement about at-will employment and the supercession clause, right? No, no, he absolutely did not. And I think there's the argument is when in the offer of at-will employment, right, that not only the duration but the conditions of employment may be changed at will of the employer. Do you have anything in Oregon law suggesting that in an at-will employment as a matter of law is limited only to the duration of employment and not only... So I'm asking more specifically, in Oregon, is there something that restrains what the employer can change in terms of conditions of employment, even assuming that there was some, you know, the initial conditions of employment were no relocation without a durational promise. You're saying they couldn't change that at will in an at-will employment scheme. Do you have any Oregon case law that says even though the employer has offered only at-will employment, that that means they can't change conditions? I don't, Your Honor, in a breach of contract context, but that flips it then to the fraud claim where we've alleged these as alternative causes of action. And when we're looking at the fraudulent inducement, it's what they knew and what they said at the time that the statement was made. And the time the statement was made that this position will not require relocation, they knew that they had hired or were in the midst of hiring someone to do a complete reorganization of its sales force. They knew that they needed to get these people on board for the fourth quarter as quickly as possible, and they needed to say whatever they could say to get them to accept this offer. They did it in an incredibly condensed time frame. They had to submit their application within a few days. And they offered Mr. Nettleton a $20,000 bonus, which they gave to him but was conditioned on him staying there for six months. So we have presented evidence into the record showing that at the time that they made the statement to him, they knew or it was with reckless disregard that they could not keep this promise to him. And so, no, I don't have case law saying that in at-will employment you can't change a term later on, but I think any contract law, if we're switching back to the contract claim, if it's a material element of the claim, of the contract, you cannot change that at-will. He had to have been given some further consideration to then modify a material term of his agreement on the contract claim. And my time is up. Thank you, Your Honor. Thank you, Counsel. We'll give you a minute for rebuttal. Appreciate it. Good morning, Your Honors. John Berg on behalf of Exact Sciences Corporation. May it please the Court. This Court's analysis can begin and end with the supersession clause. There are multiple reasons to affirm. My clients submit.  On the breach of contract. My question on the supersession, if that's where we're going to start, is my understanding of Oregon law is that later communications about the terms of the contract when there is a provision that says that this will be our agreement, whether you want to call that supersession or integration or whatever, that that controls over anything that might have been said earlier that was contrary. But if there are things that were said earlier that are not contrary to what is said last, then those things can come in. And I don't see anything in the latest statement of terms which your client wants to rely on that is contrary or says anything about location that could be contrary to what was said earlier about you're not going to have to move. So when a contract is on its face, a complete integration, there's a presumption that arises that it is the final and full agreement of the parties. The party contending that the contract exists based on those terms needs to come forward with substantial evidence. So the partial integration doctrine, though, and the parole evidence rule bars consideration of inconsistent terms. So taking your point. But isn't any term that arises from any discussion prior to 9-3 necessarily directly inconsistent with the supersession clause? How can they be reconciled? So I would argue that one contract says nothing about a subject and the other contract discusses the subject. They're not inconsistent, are they? I think the allegation here is that this contract is comprised by two different agreements. Comprised of? I'm sorry, two different documents, right, both attached to the complaint. And, of course, you can consider them all that you please. And so the supersession clause, though, says anything preceding this document on 9-3 is superseded. What preceded that? The 831 email. So if we take that location clause, there is no reference to a location or territory on the 9-3 offer letter, none whatsoever. So we are essentially grabbing something that doesn't have a placeholder in the 9-3 offer and adding it. And the supersession clause is necessarily inconsistent with that. What's the best case you have for that idea, that a supersession clause is basically just an all-out bar for everything that was said before, whether or not it was contrary or consistent, or at least compatible? The Trist case directly applies and enforces an unambiguous supersession clause. The Eagle case, I forget the full name of the Eagle case, Eagle Industries, equally is applying a supersession clause that is entirely unambiguous and as a complete bar without full consideration of even the parole evidence rule. I would argue that the parole evidence rule and the supersession clause are really two independent grounds to get to that same place, right, because the parole evidence rule bars inconsistent terms. This supersession clause bars all prior understandings, all prior agreements, not just inconsistent stuff, anything that came before. And the dates are the dates. We can't move those around. That is indisputed. That's pled in the face of the complaint. Can we talk about the fraud claim? Sure. Your Honor, I think if we look at the reply brief of the appellant, we notice they don't even mention the supersession clause. And I think that the reason for that is that there really is no explanation as to how one can reasonably rely on an expressly superseded promise. Well, if we set the supersession issue aside, I think your friend across the aisle makes a valid point of if there was going to be no location term or inducement into this contract, why say anything at all about that topic? At the time the statement is made, there's an understanding that this individual's location does not need to change. And that's exactly what the Kanselman case says is not fraud. It is expressing. Well, isn't that a disputed fact at this point? I'm sorry? Isn't that a disputed fact at this point? What, Your Honor? I'm sorry. What your client knew or should have known under the reckless standard. It needs to be pled in some way beyond a speculative level. So what we have in the facts here is the allegation that, I think in a nutshell, the allegation is that Exact Sciences had developed an intent to retain a consultant, that Exact Sciences had intended to adopt or implement whatever that recommendation may be from the consultant, that that recommendation could possibly, could is the term used in the complaint, could possibly change some territories, that Mr. Nettleton is possibly one of those individuals whose territories might change, and that Mr. Nettleton's personal circumstances or preferences might pose a problem when it comes to whether or not he can serve that territory while living in Eugene. That is a number of different contingencies to such a point. It's attenuated. The district court called it pure speculation. So we have nine separate cases interpreting Oregon law. We're saying it doesn't have to be a definite, right? There can be some contingency that would make the representation false or at least the failure to disclose the possibility of, you know, that the representation being incorrect is enough to create a misrepresentation. So it seems to me that we're somewhere not quite as, you know, firm a contingency, but there's also case law saying it doesn't have to be definite. So what is your best case for saying this one is too contingent as a matter of law? Well, you can see that the Butters case kind of surveys the law in this jurisdiction. It describes several instances in which reckless disregard can be found. To me, synthesizing them, it looks to be something that either needs to be certain or needs to be, I should say, almost or nearly certain that, right, you cannot deliver on whatever that promise may be. So in this context— But if you accept the plaintiff's—I mean, we're on a motion to dismiss here, so we accept the plaintiff's arguments. I have no idea what they could prove at the end of the day, but what they allege is at the time that I was being offered this job and being told I will not have to relocate, the company is hiring a consultant to analyze whether we're going to just reorganize all the territories. Why isn't that reckless disregard? Because if the plaintiff's allegation is true, the company, by its own conduct, is creating a situation where it may not deliver on that promise of you're not going to have to move. Anything's a possibility in that, well, circumstance, right? That, of course, is— Well, I mean, the possibility thing seems to fall flat to me when we're talking about circumstances that are entirely in control of the promisor. So entirely in control, and they did indeed deliver on the location and the territory for at least four months. So I think we have a problem in the way of the breach on the employment— I'm sorry, on the breach of contract side, but also in relation to reasonable reliance. Is it reasonable to assume that these terms are going to be permanent, as plaintiff alleges? In this context, it flies in the face of the idea that an at-will—at-will terms can be prospectively modified and accepted—acceptance by continued employment. There is no other law on that issue. So I think the biggest problem with the fraud claim is the reasonable reliance. I don't see a means to— for the language of the contract. I tell you, counsel, my biggest—I mean, I think it's a close issue, but my biggest problem with that argument is our decision in Meade versus Cedar Rapids, where there was an at-will employment. It was accepted that it was an at-will employment, and we still said, you know, promises about, you know, that there wouldn't be relocation or, you know, were not essentially overridden by the fact that the plaintiff was aware that they were accepting at-will employment. I would agree that it's not a dispositive fact. There are several facts that would lead reasonable reliance— the supersession clause, I think, alone gets you there— but that you also have the absence of the duration that we're speaking of. You have the fact that this is an experienced, highly paid professional who really should know better than to assume a contract doesn't mean what it says. And, you know, lastly, you do have an expectation. The location and territory are, by his own theory, connected to one another. His territory was changed. He says that led to automatically his location being changed. He can't marry them and now divorce them. If it was an expectation that his territory wouldn't change, it's only an expectation that his territory wouldn't change, causing a change in their location. But opposing counsel said that's a question of fact. Again, it's been pled here in such a way that I don't believe it rises above a speculative level. The cost concern, the hotel staying piece of this puzzle is a big one. You have traveling sales roles that are very common, okay? It's an in-state territory. Hotel stays are just part of sales work, especially a traveling sales scenario. The objection by the appellant to staying at least for some portion of the time when the work is on the far end of Oregon is the cost related to hotels. You're over time and I have a question, but I think there are factual differences between this case and cases that have been decided in this court on Oregon law on this issue. But I guess what my trouble is, why doesn't that at least, I mean just that there's a factual distinction, why doesn't this get past the motion to dismiss at least and there has to be development of the factual record? Again, I think there are multiple ways to get to the result. The district court did. It wasn't just the absence of reasonable reliance, although I think that's the most clear-cut basis. You do need to show an intent to defraud or reckless disregard as of the time of the 831 email. I believe on the pleading, the allegations within this complaint, you can't get there. It's too attenuated. Thank you. Thank you, counsel. One minute for rebuttal. Thank you, Your Honors. On the supersession clause, the Howell v. Oregon case says that an integration clause in a writing is an indication that the writing is intended to be a complete integration, but it is not conclusive. So even if we consider the supersession clause to be equal to an integration clause, it is not conclusive. When we have pled that it's a partial integration, we've presented to the district court a plausible theory of partial integration. We are allowed to move beyond the pleading stage to present our evidence of that. It is rebuttable. And on the issue of reasonable reliance, the court found that the supersession clause was a complete integration, and so, therefore, we could not rely. That was the court's determination. So if this court does not agree that the supersession clause, in fact, determined as a matter of law that the second half of the agreement was a complete integration, then that basis for the district court's finding of no reasonable reliance should also fall. Now, the second basis that the court said that there couldn't be no reasonable reliance was because the court found that the August 31st email was nothing more than merely a targeted advertisement sent to all Pfizer employees. Well, the district court could not make that factual determination on this record. There was no evidence in the record that any other Pfizer employee received this email to Mr. Nettleton. We put into the record the email to Mr. Nettleton that described his position of someone of his seniority, the pay he would receive, and that he himself would not have to relocate. That was not a mere advertisement sent to all Pfizer employees. So I think the court erred when it made that factual conclusion that it was an advertisement and therefore reasonable reliance could not follow. And finally, I appreciate your exhibit 47 in the exit of record 47 is the document that we put into the record to show that Exact Sciences knew at the time it made the promise, the assertion, the absolute assertion to my client that he would not have to relocate if he accepted this job offer. It shows that on December 3rd, less than three months after this statement was made to him, Project Voyager, this complete reorganization of the sales force of Exact Sciences, was being put into play. So it was already done. The person had been hired, the complete study and analysis had been done, and it was already being implemented. So there are facts in this record that shows this is beyond just speculation. This actually happened. We put the evidence into the record. And lastly, on the theory of can they change this term, this material term of the contract, that now, six months in, we're going to move your territory. Whether you think that's relocation, it's your employee at will. They said, well, continued employment, if there was needed to be a modification, his continued employment showed his acceptance of that modification. When he was told that he needed to move five days a week in territory in John Day, Oregon, the other side of the state, this isn't New York. This is the small state. This is Oregon. He quit. He did not accept the modification. Thank you, Your Honor. I appreciate it. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court.
judges: RAWLINSON, FORREST, SUNG